Nash, C. J".
 

 The hill is filed to convert a deed, absolute on its face, into a mortgage, upon the ground that it was intended by the parties to be a security for money loaned. The plaintiff alleges that several executions were in the hands of the sheriff against him, and levied by him on a negro hoy named Wesley; that on the day of sale he applied to Wm. P, Waugh, the testator of the defendant, to lend him the amount needed, to wit, $500, which he agreed to do, and while he was in the act of counting out the money, the sheriff informed the parties that the money to he raised amounted to six hundred dollars, when the counting was stopped, and a new arrange
 
 *337
 
 ment entered into, whereby it was agreed that the sale should proceed, the testator should purchase the negro, take the bill of sale to himself, and hold the slave as security for the money advanced ; all of which was done. The answer filed by the defendant, "Waugh, the executor, does not admit the alleged fact of the agreement of the parties to treat the deed as a security for the money advanced, but insists that his testator always held and claimed the boy as his absolute property. The deed from the sheriff to W. P. Waugh is absolute upon its face. To convert such 'a deed into a security for money lent, it must be shown by
 
 facts and eireumslances dehors
 
 the deed, that such was the fact, and those facts and circumstances must be such as, to the apprehension of men versed in business, and judicial minds, are incompatible with the idea of an absolute purchase, and leave no fair doubt that a security only was intended. But parol evidence by itself that, at the time of its execution, it was agreed it should be a mortgage, will not answer.
 
 Blackwell
 
 v. Overby, 6 Ire. Eq. 38. The only fact, or the material fact relied on here by the plaintiff, is that he remained two years in possession of the slave Wesley. This, however, is explained by the answer. It alleges that it
 
 was
 
 agreed subsequently to the sale, that Wesley should remain in his possession for two years at a stipulated price per annum, for which he gave his notes.
 

 The allegation in the bill, then, that the bill of sale was taken as security for the.money alleged to be lent, is not sustained by such testimony as authorises this Court to declare such to have been the fact; more particularly as the bill states a change in the first agreement, and the sale of the negro under the second.
 

 If, however, the proofs were such as to authorise the Court to make such a declaration, there is another objection fatal to the plaintiff’s claim. He has come too late to ask the aid of the Court. The contract was made in 1845, and the bill was filed in_1855 — ten years after. The delay of two years is explained by the agreed possession of the plaintiff for two years. In 1847, Wm. P. Waugli took possession, making the delayed
 
 *338
 
 time eight years. This delay was unreasonable. If the plaintiff could lie by that length of time, he might lie by any length of time at his pleasure, according to the maxim in equity, once a mortgage always a mortgage, a maxim which in its operation as applied to female slaves, has often been attended with disastrous consequences to mortgagees. To correct the grievance, an act was passed by the Legislature at its session in 1830, limiting the time to two years, within which equities of redemptions may be enforced. See Rev. Stat. ch. G5. By the 19th section, it is provided that, “when a mortgagee remains in possession of personal property for the space of two years after the time of performance specified in the agreement, or when the mortgagee shall omit, for that space of time, after the forfeiture of the mortgage, to file his bill to redeem such mortgage, he shall be forever barred of all claim in equity to such property.? The first case arising under this act was
 
 Bailey
 
 v.
 
 Carter,
 
 7 Ire. Eq. 282, where it was enforced. This was followed by
 
 Kea
 
 v.
 
 Council,
 
 2 Jones’ Eq. Rep. 315. In this case, the plaintiff’s right to redeem, arose as soon as the mortgagee took possession of the negro in 1817, there being no particular time set when the money was to be repaid. The plaintiff comes too late to ask the aid of this Court.
 

 Per Curiam, Bill dismissed.